ALLEN C. FAY & others *vs.* INHABITANTS OF MILFORD.

Worcester.   Jan. 2. — Feb. 27, 1878.   AMES & LORD, JJ., absent.

A town, having purchased a new burial-ground and voted to give, " in exchange, lots therein free of expense to those holding lots in the old," at a town meeting, called " to see if the town will adopt a code of by-laws for the new cemetery and to act on any motion relating to that or any other cemetery in town," adopted a code of by-laws which constituted the selectmen a board of trustees to take charge of the new burial-ground, authorized them to give deeds of lots, subject to certain conditions, to purchasers, and in exchange for lots in the old burial-ground, and provided that " all money received by the trustees for the lots in this cemetery, and the avails of all lots received in exchange for said lots, shall constitute a fund for the purpose of defraying the expenses of repairing and improving the avenues, walks and public grounds of the cemetery." Deeds of lots were given subject to these by-laws " and to any by-laws, rules or regulations which said town may hereafter adopt." *Held*, that no trust was created by the by-laws, which could be enforced in equity, by the owners of such lots, against the town.

BILL IN EQUITY to enforce a trust.   Hearing, upon the pleadings and the report of a master, before *Endicott*, J., who reserved the case for the consideration of the full court.   The facts appear in the opinion.

*T. L. Nelson*, for the plaintiffs.

*T. G. Kent*, for the defendant.

ENDICOTT, J.   A burial-ground in the town of Milford having become unsuitable for the burial of the dead, the town in 1859 decided to abandon it, and purchased another tract of land for burial purposes.   A portion of the old burial-ground had been divided into lots, many of which had been sold or otherwise set apart to inhabitants of the town; and the town voted to give, " in exchange, lots in the new cemetery free of expense to those holding lots in the old."   Provision was also made for removal of the dead.   Portions of the old burial-ground were afterwards sold, and some of it was appropriated by the town to other purposes, and lots were exchanged as provided in the vote.

While the change was in progress, and before it was completed, a town meeting was called in November, 1861, for the purpose, among other things named in the warrant, " to see if the town will adopt a code of by-laws for the new cemetery, and to act on any motion relating to that or any other cemetery in town."   At this meeting, a code of by-laws, so called, was

adopted; and the plaintiffs, who are proprietors of lots in the new cemetery by exchange or purchase, contend that the eighth article of these by-laws contains a promise or contract on the part of the town, which they seek to enforce by this bill.

The by-laws provide that it shall be known as the Vernon Grove Cemetery; that the selectmen shall constitute a board of trustees to take charge of it, make and publish necessary regulations for its use, and set apart a certain portion for free burial. They are required to appraise the lots, and are authorized to give deeds of the same to purchasers, and also to give deeds of lots in exchange for lots which are or may be vacated in the old burial-ground; the deeds given to be subject to certain conditions and privileges in regard to the use of the lots and the approaches to the same, not material to recite. The eighth and last article, upon which the alleged contract arises, is as follows: "All money received by the trustees for the lots in this cemetery, and the avails of all lots received in exchange for said lots, shall constitute a fund for the purpose of defraying the expenses of repairing and improving the avenues, walks and public grounds of the cemetery." The master has found that the proceeds of the sale of lots have been applied to the use and improvement of the cemetery, but that the "avails of lots" in the old burial-ground, afterwards received by the selectmen, have not been so applied. The question arises whether they must be so applied, on the ground that the town has made a contract with these plaintiffs to do so, and holds the "avails" as a trust fund for that purpose. We consider it unnecessary to decide how far the town had authority to do all the acts recited, or to enter into such a contract, as we are of opinion that no contract or trust was created by the by-laws which the plaintiffs can enforce.

Neither the warrant calling the meeting nor the language of the by-laws indicates a purpose to enter into any contract with the owners of lots, or to set apart any fund in the nature of a trust fund. It is evident that the by-laws were intended to be and are simply a series of regulations for the convenient and proper management and support of the cemetery by the town through the agency of the selectmen. The eighth article merely provides that money received from a particular source shall constitute a fund to pay the expense of repairing and improving the

cemetery. It is in the nature of an appropriation, and was not intended to place all money coming from that source, regardless of its amount or of the requirements of the cemetery, beyond the control of the town. The town could change or repeal the by-laws, appropriate the money so received to other uses, and provide for the maintenance of the cemetery in another way. See Gen. Sts. *c.* 18, § 10; *c.* 28, § 4. The language of the deeds, under which the plaintiffs hold their lots, confirms this view; for the conveyances are made, subject to the by-laws adopted, November, 1861, " and to any by-laws, rules or regulations which said town may hereafter adopt."

There was no express contract with the plaintiffs to use all this money for the purpose named, and none is to be implied. The plaintiffs have received full consideration for the exchange or purchase of their lots; and there is nothing in the votes of the town or the deeds to show any other consideration.

*Bill dismissed, with costs.*