WHITING PAPER COMPANY *vs.* HOLYOKE WATER POWER COMPANY & others.

Hampden.   May 22, 1931. — September 10, 1931.

Present: RUGG, C.J., CROSBY, PIERCE, CARROLL, & WAIT, JJ.

*Trust*, What constitutes.   *Deed*, Construction.

A corporation owning a dam on a river and a system of locks and canals for the creation of water power sold various parcels of land on the canals with "mill powers," which were rights to draw water for power from the canals, as defined in "proposals" to which the conveyances were made subject.   The "proposals" provided in a third article that the corporation was required to maintain the system and keep the canals free of obstructions; in a fifth article that "In order to continue in the . . . [corporation] an interest in common with the Grantees, for the preservation and support of the mill powers which may be granted, and to secure a fund to indemnify the Grantees for

expenses which may be incurred by them for making repairs if the . . . [corporation] should improperly neglect to make them, . . . all that is to be allowed the . . . [corporation] for the repairs" should be paid to it by making each "mill power" and the land to which it was appurtenant subject to "a perpetual annual rent" of a certain amount; and by a seventh article that, if a purchaser should suffer damage from failure by the corporation to perform its obligation of maintenance, the purchaser might "remedy the causes of injury" at the expense of the corporation, and, thirty days after the ascertainment of the amount of the expense by agreement or judgment, should "have a lien upon all the rents which may have been reserved to the . . . [corporation] upon the sale of any mill power, and which may become payable after the expiration of said thirty days." *Held,* that the corporation was not required to hold all annual "rents" received from purchasers in a trust fund to be used solely for the maintenance and repair of the system of locks and canals, but might use them for its general purposes.

BILL IN EQUITY, filed in the Supreme Judicial Court for the county of Hampden on January 21, 1931, and afterwards amended, described in the opinion.

The defendants demurred. By order of *Crosby,* J., the suit was reserved and reported upon the amended bill and demurrers for determination by the full court.

*B. W. Warren,* (*N. P. Avery & H. Stockton, Jr.,* with him,) for the defendants.

*D. E. Hall,* (*P. E. Jones* with him,) for the plaintiff.

RUGG, C.J. The plaintiff by this suit seeks to enforce an alleged trust. The material allegations of the bill are these: — The plaintiff is a corporation organized for the manufacture and sale of paper. The defendant Holyoke Water Power Company (hereafter called the defendant) was incorporated under St. 1859, c. 6, "for the purpose of upholding and maintaining the dam across the Connecticut River, heretofore constructed by the Hadley Falls Company, and one or more locks and canals in connection with the said dam, and of creating and maintaining a water-power, to be used by said corporation for manufacturing and mechanical purposes, and to be sold or leased to other persons or corporations, to be used for like purposes." Under this authority the defendant acquired possession and control of the dam and the system of locks and canals and large tracts of land bordering on the river. From time to time the de-

fendant granted and conveyed to various persons and corporations parcels of land adjacent to its canals and rights to use for power and other manufacturing purposes quantities of water called mill powers defined and measured by the terms of the grants. This water was supplied from the river by the defendant by means of its dams, locks and canals. The plaintiff acquired title to several parcels of land, mills and mill powers located on one of the defendant's canals by virtue of deeds and indentures, copies of which are annexed to the bill. These instruments of conveyance are made subject to terms and conditions set forth in a document, called proposals, which purports to govern the rights of the parties in respect to mill powers, copy of which also is annexed to the bill. The mill powers granted to the plaintiff were rights to draw water from the upper or first level canal of the defendant for use for power and manufacturing purposes in connection with lands and mills conveyed to the plaintiff under the terms of the proposals. It is averred that by several articles of the proposals the plaintiff was bound to make specified payments annually to the defendant and the defendant was bound to apply the same to the creation of a trust fund, to be used in forever maintaining and keeping in good repair the dam and canals and to be held also as security to indemnify the plaintiff for expenses which might be incurred by it for making repairs improperly neglected by the defendant. The terms of the several articles alleged to support this averment are these: —
"Art. III. The Grantors are to construct and forever keep in good repair the principal canals and from time to time, as occasion may require they are to remove and clear out obstructions that may accumulate therein, always excepting ice. They are also forever to maintain the Dam in the Connecticut River at the head of said principal canals of such length and height as may be necessary and as they may lawfully do, in order to turn the water into the canals." "Art. V. In order to continue in the Grantors an interest in common with the Grantees, for the preservation and support of the mill powers which may be granted, and to secure a fund to indemnify the Grantees for expenses which may be incurred

by them for making repairs if the Grantors should improperly neglect to make them, it is proposed that part of the consideration of every sale, and all that is to be allowed the Grantors for the repairs &c by them assumed, should be paid or secured to them in the form of a reservation of rent. It is therefore declared that each mill power with the land to which it is annexed, shall forever be subject to a perpetual annual rent of at least two hundred and sixty ounces troy weight of silver of the present standard fineness of the silver coin of the United States, or an equivalent in Gold, at the option of the Grantee at the time of payment which rent is to be paid in yearly payments forever, free from all charges or deduction whatever for taxes or assessments of every description which may be assessed or levied upon any granted premises after the making of the deed, all of which are assumed by the Grantees and a perpetual annual rent at least equal to the above shall be reserved for every mill power hereafter sold." "Art. XVIII. Any corporation or person purchasing any mill site and mill power of the Holyoke Water Power Company, shall have the right at its pleasure, to relieve itself from the payment of the annual rent above mentioned by paying to the Holyoke Water Power Company, their successors and assigns, a sum of money sufficient to produce at the rate of six per centum per annum, an amount equal to the amount of said annual rent, which amount of money so paid shall be received, invested and retained by the Holyoke Water Power Company its successors and assigns, as a fund towards defraying the charges and expenses of maintaining the water power and water privileges of said Company, its successors and Assigns; and said fund shall be subject to the same liens for the same purposes as the rent for which it is substituted is made subject." Further allegations of the bill are that the plaintiff has continuously used for power and other purposes the mill powers granted to it from the date of the grant to the filing of the bill and has made payments required as rentals therefor aggregating more than $200,000. Numerous other persons and corporations have from time to time acquired from the defendant and grantees of the defendant

land, mills and mill powers to be held and enjoyed under the terms and conditions of the proposals and have paid to the defendant on account thereof the stipulated rentals, the amounts of which are unknown. The defendant has not used the payments thus made to create a trust fund and has not held or applied all of them for the stated trust purposes but has used them largely for its general purposes including the payment of dividends. The defendants demurred to the bill assigning numerous causes.

The primary question for decision is whether the articles of the proposals, already quoted, in the light of the entire transactions set up a trust or a binding agreement for a trust of the sums paid as rentals by the plaintiff and by other grantees of mill powers. The effect of art. III of the proposals is to impose upon the defendant a perpetual obligation to maintain the dam and to keep in good repair and free from obstructions the principal canals to the end that the required mill powers be constantly supplied and available to the grantees. One purpose of art. V as recited in its preamble is to continue in the grantor an interest in common with the grantees for the preservation and support of the mill powers. Such an interest in common could be attained more effectually by reserving to the grantor the valuable pecuniary interest in the granted premises in the guise of annual rent than by the establishment of a trust fund to be expended for a restricted end. If it was the design never to permit the grantor to use any of the rent reserved for its own purposes but to require all rents to be held for accumulation in trust except so far as needed for the specified end, there would have been little or no "interest in common" on the part of the grantor. Another purpose recited in art. V is to secure a fund to indemnify the grantees for expenses incurred by them in making repairs if the grantor should neglect its duty in this particular. There is no statement in art. V as to the manner in which the fund shall be applied. It is provided by art. VII, "If any Grantee shall suffer damage from want of water from causes not arising from the neglect or misconduct of himself and which may be removed or remedied, and the Grantors

shall, after due notice for that purpose, unreasonably fail
to remove the obstructions, or remedy the mischiefs, the
Grantees injured, or any of them, may in the best manner
they may be able, remove or remedy the causes of injury
at the Grantors expense; and to pay and indemnify them
for the expense and charge thereby incurred such Grantees
shall, after the expiration of thirty days from the time the
amount of such expense shall have been adjusted and agreed
to by the parties, or ascertained by final judgment at law or
by award of referees, have a lien upon all the rents which
may have been reserved to the Grantors upon the sale of
any mill power, and which may become payable after the
expiration of said thirty days, and may demand, sue for and
receive the same, until they shall be fully reimbursed as
aforesaid." This provision makes clear the meaning of that
part of art. V whereby a fund to indemnify the grantees was
to be secured. A grantee subjected to expense by reason of
the neglect of the grantor is given an equitable charge or
lien upon all rents payable to the grantor in conformity to
the conditions there set forth. The lien does not spring into
being until the expense has been incurred. It applies only
to rents subsequently payable. A lien thus described and
created is an equitable charge. It is aptly described in
language nearly contemporaneous with the execution of the
proposals: "Such an agreement raises a trust which binds
the estate to which it relates; and all who take title thereto,
with notice of such trust can be compelled in equity to
fulfil it." *Pinch* v. *Anthony*, 8 Allen, 536, 539. Thus the
several articles of the proposals are harmonious. The lan-
guage and the operative effect of these provisions negative
the theory that all rents whenever received by the defendant
constitute a trust fund to be held solely for the maintenance
and repair of the dam and canals. Apart from the mention
of a "fund" there is nothing in art. V indicating a purpose
to establish a permanent trust. The annual payments to
be made to the grantor are termed "rent." The ordinary
significance of that word is consideration paid for the use or
occupation of property. *Guild* v. *Sampson*, 232 Mass. 509,
513. Other provisions of that article confirm the interpreta-

tion that its chief aim was to assure the grantor the full rental reserved.

The instruments as a whole are repugnant to the contention that a permanent fund to be held in perpetual trust was intended to be created out of all rentals paid. Valuable rights retained by the grantor and set out with particularity in the proposals apparently were intended to yield to it substantial annual revenue. It is manifest that the proposals were drafted with great care by a skilled and learned conveyancer. They were designed to regulate the use of important property interests for a long period of time, during which radical changes in commercial customs, manufacturing undertakings and business methods well might come to pass. It is inconceivable that, if it had been intended to set up a permanent trust fund to which all rentals must be constantly added, language directly and clearly accomplishing that result would not have been employed. Ambiguous and obscure forms would not have been used.

There is no support in art. XVIII for the contention of the plaintiff. That article is expressly excepted from all conveyances to the plaintiff and its predecessors in title according to the copies annexed to the bill. It does not appear that any purchaser of a mill site and mill power from the defendant has ever commuted liability for annual rental by a cash payment as permitted by art. XVIII. As one of the circumstances attending conveyances in which the plaintiff is interested it fails to aid its interpretation of art. V.

To adopt the contention of the plaintiff would raise grave doubts about the validity of the alleged trust. It is unnecessary to enter upon a discussion of those matters. It may be noted that, although these instruments have been in existence for almost seventy years and the first deed to the plaintiff was dated in 1865, it does not appear that the contention here urged in its behalf has been put forward until the present suit.

We are of opinion that according to the true construction of the instruments in question the defendant is under no obligation to set up a permanent trust fund with the annual rentals received by it for its mill powers under the terms of

the proposals. This conclusion finds some support in *Fay* v. *Milford*, 124 Mass. 79.

It follows that the demurrer must be sustained on causes numbered eight, thirteen, fourteen and twenty. These causes go to the vitals of the plaintiff's bill and it does not appear that these defective grounds can be cured by amendment. Therefore in accordance with the terms of the report an interlocutory decree may be entered sustaining the demurrer for the causes just stated and a final decree may be entered dismissing the bill.

*Ordered accordingly.*