JOHN G. MICHALOVIC, Individually and as Administrator of the Estate of JOSEPH MICHALOVIC, Deceased, Appellant-Respondent, v GENESEE-MONROE RACING ASSOCIATION, INC., Respondent-Appellant.

Fourth Department, February 13, 1981

### APPEARANCES OF COUNSEL

*Brown, Kelly, Turner, Hassett & Leach (Robert Michalak* of counsel), for appellant-respondent.

*Hurwitz & Fine, P. C. (Sheldon Hurwitz* of counsel; *Paul J. Suozzi* with him on the brief), for respondent-appellant.

### OPINION OF THE COURT

MOULE, J.

The question presented on this appeal is whether section 9-103 of the General Obligations Law provides defendant with a defense to liability as a matter of law.

On August 7, 1977, 14-year-old Joseph Michalovic was

riding a motorbike in the parking lot of the Batavia Downs Race Track (Batavia Downs). The race track was closed and the parking lot was vacant. While driving in large loops, at approximately 25 to 30 miles per hour, the motorbike suddenly stopped short and Michalovic was catapulted forward. He died of strangulation caused by a crushing injury to his trachea and larynx.

Defendant owns and operates Batavia Downs. The parking lot is an asphalt surface approximately 660 feet wide and 1,400 feet long. A 30-foot-wide drive extends into the lot from the entrance gate to two pay booths. To direct traffic to the pay booths, concrete parking bumpers form a curb along the east side of the drive; a curb on the west side is also formed by concrete bumpers except for a section consisting of a 60-foot chain. This chain is stretched between two supports with a portable standard in the middle, and can be moved when necessary to provide an additional exit lane. It is believed Michalovic's accident was caused by his striking a concrete parking bumper or the chain.

There is no indication that Michalovic had been given permission to ride in the parking lot or had paid for entry, nor is there any indication that defendant or any of its employees knew of his presence. There is evidence that the parking lot was regularly used by children as a play area for activities such as baseball, football and riding bikes, and that in the winter they played on the mounds of snow along the sides of the lot. A maintenance superintendent for defendant had seen children play in the parking lot but never ride motorbikes there. He was unaware of any prior accidents at the parking lot involving children.

Plaintiff, individually and as administrator of the estate of Joseph Michalovic, commenced this action for personal injury and wrongful death caused by defendant's negligent operation and maintenance of its property. Defendant asserted section 9-103 of the General Obligations Law as an affirmative defense, and then moved for summary judgment against plaintiff on this ground, contending that it eliminates landowner liability when property is being gratuitously used for recreational purposes. Plaintiff cross-moved for judgment dismissing the affirmative defense on the

ground that section 9-103 applies only to land included within ECL 11-2111, and that defendant's land, by its nature, is not so included. Plaintiff also cross-moved for permission to amend his complaint to allege a "willful or malicious failure to guard, or to warn against, a dangerous condition, use, structure or activity" (General Obligations Law, § 9-103, subd 2, par a).

Both summary judgment motions were denied, and plaintiff was permitted to amend his complaint. The court held that the section 9-103 defense was not restricted in its operation only to owners of farmlands, rural lands or other unimproved lands, and that a question of fact existed on defendant's alleged willful or malicious failure to guard or warn. Both parties appeal the order of the court: plaintiff from that portion which denied its motion to dismiss defendant's affirmative defense, and defendant from those portions which denied its summary judgment motion and permitted plaintiff to amend his complaint.

Section 9-103 of the General Obligations Law provides in relevant part:

"§ 9-103. No duty to keep premises safe for certain uses; responsibility for acts of such users

"1. Except as provided in subdivision two,

"a. an owner, lessee or occupant of premises, whether or not posted as provided in section 11-2111 of the environmental conservation law, owes no duty to keep the premises safe for entry or use by others for hunting, fishing, canoeing, boating, trapping, hiking, cross-country skiing, speleological activities, horseback riding, bicycle riding, hang gliding, motorized vehicle operation for recreational purposes, snowmobile operation, cutting or gathering of wood for non-commercial purposes or training of dogs, or to give warning of any hazardous condition or use of or structure or activity on such premises to persons entering for such purposes * * *

"2. This section does not limit the liability which would otherwise exist

"a. for willful or malicious failure to guard, or to warn against, a dangerous condition, use, structure or activity".

The purpose of the predecessor of section 9-103 (former Conservation Law, § 370; L 1956, ch 842) was to increase the access to land suitable for the listed recreational activities by legislatively eliminating the tort liability of landowners, except in instances of willful or malicious behavior, for personal injuries (NY Legis Doc, 1956, No. 11, Report of Joint Législative Committee on Revision of Conservation Law, pp 23, 26). Reference to the "posting" of lands is set forth solely to show that the Legislature did not intend a failure to post to mean consent; persons entering unposted land for recreational purposes assumed the status of licensees who took the premises as they found them and assumed the risk, rather than the failure to post being construed as any type of invitation *(Rock v Concrete Materials*, 46 AD2d 300, app dsmd 36 NY2d 772; Bill Jacket to L 1956, ch 842, pp 18-20).

In its original form, the statute included only the activities of hunting, trapping, fishing and training of dogs (former Conservation Law, § 370, L 1956, ch 842). The statute was recodified as section 9-103 of the General Obligations Law in 1963 (L 1963, ch 576). Since then, its scope has been expanded by the adding of new activities: hiking (L 1965, ch 367); horseback riding (L 1966, ch 886); training of dogs (L 1968, ch 7); operating snowmobiles (L 1968, ch 7); motorized vehicle operation for recreational purposes (L 1971, ch 343); bicycle riding (L 1972, ch 106); canoeing (L 1977, ch 91); hang gliding (L 1978, ch 147); cross-country skiing (L 1978, ch 187); speleological activities (L 1978, ch 187); cutting or gathering of wood for noncommercial purposes (L 1979, ch 336); and boating (L 1979, ch 408). In adding motorized vehicle operations, the expressed purpose was concern over such vehicles as "an object of recreation on designated trails and backways over private property", centering on use "off the road" and as a means to "penetrate into unused hinderlands [*sic*]" (Bill Jacket to L 1971, ch 343, pp 19-20).

Section 9-103 does not give defendant a defense to this action as a matter of law. The property in question is not of the nature contemplated by the Legislature as within the protective scope of the amendment on motorized vehicle operation. In adding motorized vehicle operation to the list of

activities, the legislative intent was to open up property of a relatively undeveloped nature by insulating the landowner for most injuries caused by this recreational use. The amendment's coverage does not extend to include this asphalt parking lot, designed with equipment to control and restrict the free movement of traffic. Consequently, defendant's affirmative defense should be dismissed and its summary judgment motion denied.

In light of the holding here, it is not necessary to address defendant's contention that plaintiff was improperly permitted to amend his complaint; since section 9-103 is inapplicable, plaintiff need not allege a "willful or malicious failure to guard, or to warn against, a dangerous condition, use, structure or activity" (General Obligations Law, § 9-103, subd 2, par a).

Accordingly, the order so far as it denied plaintiff's cross motion should be reversed and an order entered in favor of plaintiff granting the motion to strike defendant's second affirmative defense, otherwise affirmed.

DILLON, P. J., HANCOCK, JR., DOERR and DENMAN, JJ., concur.

Order unanimously modified and as modified affirmed, with costs to plaintiff, in accordance with opinion by MOULE, J.