WILLIAM RUSSO, an Infant, by His Parent and Natural Guardian, LOUIS RUSSO, et al., Appellants-Respondents, v CITY OF NEW YORK, Respondent, and CONSOLIDATED EDISON OF NEW YORK, INC., Respondent-Appellant.

First Department, April 8, 1986

## APPEARANCES OF COUNSEL

*Jules J. Ravo* of counsel *(Reardon & Sclafani, P. C.,* attorneys), for appellants-respondents.

*Elizabeth S. Natrella* of counsel *(Larry A. Sonnenshein* with her on the brief; *Frederick A. O. Schwarz, Jr., Corporation Counsel,* attorney), for respondent.

*Joseph J. Klem* of counsel *(Ernest J. Williams,* attorney), for respondent-appellant.

## OPINION OF THE COURT

ASCH, J.

On March 12, 1977, the then 14-year-old plaintiff, William Russo, was injured while riding his motor bike on a dirt roadway on property owned by the defendant City of New York in Westchester County. A subsurface aqueduct, which is part of the New York City reservoir system, traverses the property. The system consists of a water conduit or aqueduct which runs underneath the ground from the Catskill Mountain reservoirs through various counties, including Westchester, into New York City. Pursuant to a written agreement with the city, defendant Consolidated Edison Company of New York, Inc., had erected steel towers on the property to transmit electric power lines along the route of the aqueduct. Plaintiff claims that he was hurt when he struck a cable which was strung across the roadway between two of the towers.

This strip of undeveloped land, known as the Catskill Aqueduct Lands, runs the entire length of Westchester County at varying widths of 125 to 230 feet. It crosses cities, towns and other residential areas, and at the place of the accident passed through the Town of Greenburgh. The dirt road upon which the plaintiff was riding his motor bike was approximately 25 feet wide and extended through the entire length of the Catskill Aqueduct Lands. The road allegedly was used by Con Edison to afford its employees access to cut or trim the trees beneath the transmission lines.

Both defendants moved to dismiss the complaint on the

basis of General Obligations Law § 9-103, the so-called "Recreational Use" statute, which provides in pertinent part:

"§ 9-103. No duty to keep premises safe for certain uses; responsibility for acts of such users

"1. Except as provided in subdivision two,

"a. an owner, lessee or occupant of premises, whether or not posted as provided in section 11-2111 of the environmental conservation law, owes no duty to keep the premises safe for entry or use by others for hunting, fishing * * * canoeing, boating, trapping, hiking, cross-country skiing, tobogganing, sledding, speleological activities, horseback riding, bicycle riding, hang gliding, motorized vehicle operation for recreational purposes, snowmobile operation, cutting or gathering of wood for non-commercial purposes or training of dogs, or to give warning of any hazardous condition or use of or structure or activity on such premises to persons entering for such purposes;

"b. an owner, lessee or occupant of premises who gives permission to another to pursue any such activities upon such premises does not thereby (1) extend any assurance that the premises are safe for such purpose, or (2) constitute the person to whom permission is granted an invitee to whom a duty of care is owed, or (3) assume responsibility for or incur liability for any injury to person or property caused by any act of persons to whom the permission is granted.

"2. This section does not limit the liability which would otherwise exist

"a. for willful or malicious failure to guard, or to warn against, a dangerous condition, use, structure or activity".

Special Term, in granting the motion to dismiss, found that the defendants, as owner and occupant of the premises, respectively, had no duty to keep the premises safe for recreational motorized vehicle operation. The rationale of the court was that the statute was to be construed according to the ordinary meaning of its words and that resort to extrinsic matter was inappropriate when the statutory language was unambiguous and the meaning unequivocal.

However, words which seem to have a "plain meaning" often assume a different meaning depending upon the factual context in which they are to be applied. (See, Naylor, Hers, New York Times, Feb. 20, 1986, p C2 ["A word's meaning can often depend on who says it."].) For this reason, in the matter before this court, resort to legislative history and purpose is

imperative. " ' "The legislative intent is the great and controlling principle. Literal meanings of words are not to be adhered to or suffered to 'defeat the general purpose and manifest policy intended to be promoted' " ' ". *(Matter of Petterson v Daystrom Corp.,* 17 NY2d 32, 38.)

The Legislature never intended the statute to limit the liability of owners or lessees of premises situated in, through or around highly developed areas. It intended the restriction on liability to apply only to land located in remote, undeveloped areas.

When enacting the text and provisions of General Obligations Law § 9-103, the Legislature obviously intended to encourage owners of large, undeveloped tracts of land to open their property to sportsmen. Thus, the Legislature originally enacted the provisions of section 9-103 as Conservation Law § 370 in 1956. In its original form, the statute included only the activities of hunting, trapping, fishing and the training of dogs. The legislative memorandum submitted in support of the proposed legislation stated, *inter alia,* that the statute was intended to assist "in the management and use of wildlife resources of the state" (memorandum of Joint Legislative Committee on Revision of the Conservation Law, 1956 McKinney's Session Laws of NY, at 1943).

The precise issue involved herein—whether the statute applies to all lands or only lands located in remote, undeveloped areas—has been considered by both the Appellate Division, Fourth Department, and the Appellate Division, Second Department. Each of those courts has held that the statute should be applied only to remote, undeveloped lands.

In *Michalovic v Genesee-Monroe Racing Assn.* (79 AD2d 82), the Fourth Department found, as a matter of law, that the legislative intent of the statute was to open up property of a relatively undeveloped nature by insulating the owner from liability for most injuries caused by recreational use. The court in *Michalovic* specifically reviewed the Legislature's intent in adding the enumerated activity of motorized vehicle operations to the purview of the statute, stating (p 85): "In adding motorized vehicle operations, the expressed purpose was concern over such vehicles as 'an object of recreation on designated trails and backways over private property', centering on use 'off the road' and as a means to 'penetrate into unused hinderlands *[sic]*' (Bill Jacket to L 1971, ch 343, pp 19-20)."

The Appellate Division, Fourth Department, has also considered the type of property to which the protection of the statute should be afforded. In *O'Keefe v State of New York* (104 AD2d 43), it held that section 9-103 does not apply to a claim against the State or a municipality for negligence in operating and maintaining public parks and recreational facilities. In an opinion by then Justice Hancock, Jr., the court found that "as originally enacted the legislation was envisioned as applying to tracts of wild or undeveloped property suitable for hunting, fishing and trapping * * * which the owner could not reasonably be expected to inspect or maintain in a safe condition" *(supra,* at p 48).

The Appellate Division, Second Department, has also considered the question of the statute's applicability to all lands or only to lands of a remote, undeveloped nature *(Ferres v City of New Rochelle,* 112 AD2d 918) where plaintiff, while entering a park in the City of New Rochelle on a bicycle, was injured when he struck a chain suspended across the roadway.

The defendant urged dismissal at trial based on General Obligations Law § 9-103. The trial court, relying on *Michalovic (supra),* ruled, as a matter of law, that the provisions of section 9-103 were inapplicable on the ground that the statute was intended to apply solely to property of a remote and undeveloped nature. The Second Department agreed that General Obligations Law § 9-103 did not apply.

Defendants here rely on *Sega v State of New York* (60 NY2d 183) asserting that according to this decision, the statute applies to all landowners. This position, however, is not supported by the holding in *Sega.*

The Court of Appeals noted in *Sega* that "[t]hese appeals present the question whether the State may invoke section 9-103 in defense of claims for injuries occurring on State-owned lands." *(Sega v State of New York, supra,* at p 190.) The court's decision was limited to a discussion of the Legislature's intention to extend the protection of the statute to public as well as private lands. The decision did not consider the nature or character of the property to which the statute applies and therefore is not controlling here.

One of the claimants in *Sega (supra)* was injured on a 4,200-acre parcel of land located within the Adirondack Forest Preserve. The other claimant was injured on a large parcel of land within the Catskill Forest Preserve. It is, therefore, clear that the lands upon which the claimants were injured were

large, remote and undeveloped premises within forest preserve areas.

Although the *Sega* court concluded that the legislative intent of the statute is apparent from its language, this conclusion must be limited to its specific holding, i.e., that the statute applies both to public and private property. Judge Hancock, Jr., in *O'Keefe v State of New York (supra)*, noted that the language in *Sega* must be limited to the specific holding in those cases: "We note that the *Sega* court's rejection of arguments based on legislative history * * * pertains only to the question of whether section 9-103 of the General Obligations Law may be read to include State-owned lands in appropriate circumstances, the answer to which, the court concluded, was clear from the face of the statute. Nothing in that decision precludes us from referring to legislative history in considering an entirely different question, viz., the nature of the property and the types of claims which are within the reach of the statute." *(O'Keefe v State of New York, supra,* pp 45-46, n 2.)

The aqueduct property is neither remote nor undeveloped. The aqueduct profile and the map designating the course of the transmission lines clearly illustrate that this property runs through the heart of Westchester County, including the Cities of Yonkers and White Plains. The infant plaintiff entered the property from a public roadway in the Town of Greenburgh and there are many residential homes located in close proximity to the area where the accident occurred.

The narrow strip of land on which the plaintiff was injured is located in a densely populated and highly developed area not within the purview of General Obligations Law § 9-103 and the ordinary standards of negligence should apply.

Accordingly, the order of the Supreme Court, Bronx County (Louis Fusco, Jr., J.), entered on December 24, 1984, which granted the motion of defendant City of New York and the cross motion of defendant Consolidated Edison Company of New York, Inc., for summary judgment and dismissed the plaintiffs' amended complaint alleging ordinary negligence on the part of defendants and granted a cross motion of the plaintiffs for leave to serve a second amended complaint based on gross negligence of defendants, should be modified, on the law, to reinstate the causes of action of the amended complaint alleging ordinary negligence, and otherwise affirmed, without costs or disbursements.

CARRO, J. P., FEIN, MILONAS and ELLERIN, JJ., concur.

Order, Supreme Court, Bronx County, entered on December 24, 1984, unanimously modified, on the law, to reinstate the causes of action of the amended complaint alleging ordinary negligence, and otherwise affirmed, without costs and without disbursements.