OPINION OF THE COURT
Donald J. Corbett, Jr., J.
On September 21, 1968, claimants Vernooy and Davidson, then both 15 years of age, were swimming in Lake Champlain *80 off the shore of Crab Island when they discovered two rare Georgian bronze cannon.
These cannon are very rare historical artifacts, cast in Woolrich, England, by Andrew Schalch, a Swiss, for King George II in 1748. They were transported to the colonies to aid the British in the French and Indian War, were subsequently captured by the French, and placed on board the warship Muskellunge. In 1759, while patrolling on Lake Champlain, the ship was scuttled and the cannon were lost until the claimants discovered them in 1968.
The discovery attracted considerable local attention, including the New York State Historian who traveled to Plattsburgh, viewed the cannon and discussed the property rights with the claimants and their parents. He asserted title in the name of the State of New York, which assertion was disputed by claimants. It is not disputed that the State, while perhaps internally reinforcing its ownership claims, did not thereafter contact the claimants to assert ownership or to take possession. Claimants thus retained possession and control of the cannon, arranging to display the cannon on front lawns and at the Plattsburgh Post Office and to otherwise possess, maintain and be responsible for them, until 1982.
More than 13 years after their discovery, claimants, now adults, decided to enter into a contract with Sotheby’s to auction off thé cannon in May of 1982. The State disputed claimants’ ownership and was ultimately successful in a motion for summary judgment in Supreme Court. The parties agreed that a conditional auction be held, at which the high bid for both cannon was $68,000. The cannon thereafter remained stored at Sotheby’s from May of 1982 until April 1984. The Appellate Division, First Department (State of New York v Vernooy, 109 AD2d 682), modified the Supreme Court decision only to the extent of transferring the issue of damages to the Court of Claims for an assessment of the amount of compensation for "reasonable salvage, and all necessary expenses incurred in the preservation and keeping” of the two cannon, pursuant to Navigation Law § 132.
To the extent that the State of New York opposes the claim herein by asserting that the cannon should be classified as archaeological finds under Education Law § 233 and not salvage under Navigation Law § 130 et seq., it seeks its third bite of the apple. First, the Appellate Division noted that the State did not challenge the Supreme Court’s direction of Vernooy *81 and Davidson’s entitlement to reasonable salvage and all necessary expenses (State of New York v Vernooy, supra, at 683). Second, the State then moved in the Court of Claims to dismiss the instant claim, filed pursuant to the Appellate Division’s order, inter alia, contesting the jurisdiction of this court to hear actions based on Navigation Law § 132. The Court of Claims found that the order transferring the action and directing an assessment of damages was the "law of the case”. Thus, I shall now examine the only appropriate matter before the court, to wit, a determination of the assessment of the salvage and expenses.
SALVAGE
Navigation Law § 132 allows the payment of a reasonable salvage and all necessary expenses incurred in the preservation and keeping of the property. As noted by claimants, this is limited by Navigation Law § 136 to an amount in salvage not to exceed one half of the value of the property. Acknowledging that the cannon were the best ever offered by Sotheby’s from any period of history and were in incredible condition, beautifully and elegantly engraved, claimants urge the court to award the sum of $34,000, precisely one half of the amount offered in May 1982 at the conditional auction.
Salvage has been long defined as the compensation allowed to persons by whose assistance a ship or her cargo has been saved for recovering such property from actual loss, as in cases of shipwreck, derelict or recapture (The Blackwell, 10 Wall [77 US] 1, 12 [1869]). Compensation as salvage is not viewed merely as pay under quantum meruit or remuneration pro opere et labore, but a reward for services and an inducement for others to engage in such undertakings to save life and property. There were generally six factors to be considered in making such an award: (1) the labor expended by the salvors; (2) the promptitude, skill and energy displayed; (3) the value of the property used by the salvors and the risks thereto; (4) the risk in saving the property from pending peril; (5) the value of the salvaged goods; and (6) the degree of danger from which the property was rescued (The Blackwell, 10 Wall [77 US], at 14). Contrary to the State’s assertion, the statute (Navigation Law § 136) does indeed key an award of salvage based upon the value of the property. Here the best source of assessing the value of the property was the conditional auction at Sotheby’s held in May of 1982, with a high *82 bid totaling $68,000. While that was a conditional auction, with title to the cannon still in question, there is no evidence or testimony at trial disputing that the $68,000 bid accurately reflected a fair market value of the cannon at that time and place. In fact, the Appellate Division acknowledged the State’s indebtedness to claimants herein for having located, salvaged and maintained the cannon and noted that their actions redound greatly to the benefit of all of the people of the State, especially in the Lake Champlain area (State of New York v Vernooy, supra, at 684). I similarly find that the cannon are magnificent and wonderfully preserved artifacts of great historical significance. Accordingly, I find claimants to be entitled to one half of the value of the cannon, that is, $34,000 for the salvage thereof.
ATTORNEY’S FEES
Claimants urge an award for their attorney’s fees. Regardless of the merits of such assertion, I am deprived by statute from allowing counsel or attorney’s fees to any party (Court of Claims Act § 27). In rare occurrences, not falling within the statute and not pertinent here, legal expenses and attorney’s fees have been permitted upon the discontinuance of an unauthorized appropriation of negative easements (Terrace Hotel Co. v State of New York, 19 NY2d 526, 531). Even a monetary sanction payable to a claimant’s attorney upon the State’s default in filing an answer to a claim has been found impermissible (Spickerman v State of New York, 85 AD2d 60). To the extent that Exchange Natl. Bank v State of New York and Holtz Buick v State of New York (88 Misc 2d 444, 452-453) allow recovery of counsel fees and disbursements incurred in other legal proceedings involving a claimant and third parties and. resulting directly from the State’s negligence, the court did not allow such fees for the institution and prosecution of those claims. In the instant claim, no such negligence is alleged, all legal fees and disbursements were incurred in defending and bringing actions against the State of New York, not by or against third parties (cf., Central Trust Co. v Goldman, 70 AD2d 767, appeal dismissed 47 NY2d 1008, cross appeal dismissed 48 NY2d 654). I find that Exchange Natl. Bank and Holtz Buick (supra) cannot be read as providing an exception to the blanket prohibition of Court of Claims Act § 27, but merely as allowing damages flowing from the State’s negligence. In the absence of guidance on this question from *83 the parties, I am constrained accordingly to deny in toto all claims herein for legal fees and disbursements.
NECESSARY EXPENSES
Claimants are entitled to all necessary expenses incurred in the preservation and keeping of the property (Navigation Law § 132). The meaning of the statutory language is sharp, clear, and in this case, the words are not subject to an assumption of a different meaning depending upon the factual context in which they are to be applied (cf., Russo v City of New York, 116 AD2d 240, 242). The statute does not contemplate, and I cannot subscribe to claimants’ well-conceived but fatally flawed assertion that claimants’ expenses incurred in asserting title were necessary for the preservation and keeping of the property. Without diminishing the indebtedness of the State to claimants for recovering the cannon, claimants were put on notice immediately in September 1968 that the State was asserting a claim to title. An employee of the State, while perusing a catalogue from Sotheby’s in early 1982, espied the offering for auction of the cannon. This ultimately roused the State from its 14-year somnolence.* Thus spurred to abrupt action, the State successfully obtained title to the cannon.
It cannot be said that placing the cannon for auction with Sotheby’s was a "necessary expense” in the "preservation and keeping” of the cannon. Even granting a most liberal and broad reading of the statute cannot alter its plain meaning. By placing the cannon up for auction the claimants not unreasonably sought personal financial gain, but the putative expenses thereof were not necessary to preserve the cannon, and thus are not recoverable here.
Regardless, claimants did expend certain moneys which clearly fall within the definition and thus they are entitled to reimbursement for the cost of carriages to hold the cannon ($1,300), and for photographs for identification and related purposes ($900), as well as storage fees from the date of recovery in September 1968 until the State obtained title and possession on or about April 1984, a period of some 15 x/i years. The court assigns the nominal (contrast Sotheby’s storage charges of $13,600 for 20 months) assessment of $25 a month *84 per cannon, as each claimant independently stored and secured one cannon during this period, for a total of $9,300. These expenses, totaling $11,500, are the only ones proven to be necessary for the preservation and keeping of the cannon and thus are due the claimants.
Accordingly, claimants are awarded $34,000 for reasonable salvage and $11,500 for necessary expenses, for a total of $45,500, with interest thereon from the date of the filing of the claim herein on July 25, 1985. Of course, any further compensation or reward is a matter which must be addressed to the State Legislature (State of New York v Vernooy, supra, at 684).
All motions made at trial and not heretofore ruled upon are now denied.

 No time runs against the State in its sovereign capacity. Neither the Statute of Limitations nor loches, otherwise fatal to mere mortals, is available against the King or the State as sovereign (State of New York v Vernooy, 109 AD2d 682, 683, and cases cited therein).