ELIZABETH J. JOHNSON, Adm'r of the Estate of Ronald Johnson, Deceased, Plaintiff-Appellee, *v.* STRYKER CORPORATION *et al.*, Defendants-Appellants.

First District (4th Division)    No. 78-848

Opinion filed March 29, 1979.

Beverly, Pause, Duffy & O'Malley and Murphy, Timm, Lennon, Spesia & Ayers, both of Chicago (Robert O. Duffy and Ralph C. Murphy, of counsel), for appellants.

Horwitz, Anesi, Ozmon & Associates, Ltd., of Chicago, for appellee.

Mr. JUSTICE ROMITI delivered the opinion of the court:

The sole issue certified to this court under Supreme Court Rule 308 (Ill. Rev. Stat. 1977, ch. 110A, par. 308), is:

> "Whether a landlord as defined in said act who does not make his land available to the general public for recreational purposes may seek the protection of the Recreational Use of Land and Water Areas Act of 1963, Illinois Revised Statutes, Chapter 70, Section 31-37."

The court held that he may not, but certified the question for our immediate consideration. We disagree and reverse and remand with directions to dismiss the complaint.

On July 26, 1977, the plaintiff Johnson, as administrator of the estate of the decedent, filed a complaint for wrongful death and pain and suffering; the decedent died on September 21, 1976, from injuries arising out of an August 18, 1972, accident when the plaintiff's decedent dove into a pond on the property of defendant Stafford, these injuries being aggravated by a second accident in 1976. The first count of the complaint is directed against the defendant allegedly responsible for this second accident and is not involved in this appeal. The second and third counts are directed against the defendant Stafford and involve claims for wrongful death and pain and suffering respectively. In these counts the plaintiff alleged that the defendant owned and maintained a piece of property in the village of Minooka, Illinois (the defendant denied that the property was located in Minooka and apparently the court found that it was not since he certified that the defendant was a landowner as defined in the Act, and that Act includes only land located outside the corporate limits of a city, village or incorporated town (Ill. Rev. Stat. 1971, ch. 70, par. 32(a))); that the decedent had been an invitee lawfully on the premises; that at the time of the accident the decedent was 15 years old and was exercising that care commensurate with a child of that age; that the defendant was guilty of one or more of the following careless and negligent acts or omissions: (a) failure to make a reasonable inspection of the pond, when the defendant knew, or in the exercise of ordinary care should have known that the inspection was necessary to prevent injury to

the decedent, (b) failure to warn decedent of the dangerous condition when the defendant knew or in the exercise of ordinary care should have known that the warning was necessary to prevent injury to the decedent, (c) allowing debris to accumulate in the pond, (d) failure to remove debris from the pond, (e) improperly maintaining, operating and controlling the premises so that as a direct result thereof, the decedent was injured; and that as a result of these acts and omissions the decedent sustained injury when he struck his head upon diving into the pond.

The defendant, while denying most of the allegations of the complaint, including the allegation that the decedent was an invitee lawfully on the premises, raised as an affirmative defense the immunity created by the Recreational Use of Land and Water Areas Act and moved that counts II and III be dismissed.

The plaintiff moved to strike this additional defense claiming that the statute was inapplicable because the property was not open to the public. She produced deposition testimony showing that while at least some school children could and did use the pond, they were supposed to ask for permission first, and usually did so. Furthermore, there were signs posted, one reading "Swim at your own risk—we are not responsible," and the other "private property—no swimming on holidays—do not litter—pick up your own trash."

The court ruled that the Act was not available as a defense because the land was not open to the general public for recreational purposes, and struck the defense. It also certified the question to this court for immediate consideration.

The relevant portions of the Recreational Use of Land and Water Areas Act (Ill. Rev. Stat. 1971, ch. 70, pars. 31—34, 36), read as follows:

"§1. The purpose of this Act is to encourage owners of land to make land and water areas available to the public for recreational purposes by limiting their liability toward persons entering thereon for such purposes.

§2. As used in this Act, unless the context otherwise requires:

(a) 'Land' means land located outside the corporate limits of a city, village or incorporated town and not subdivided into blocks and lots and includes roads, water, watercourses, private ways and buildings, structures, and machinery or equipment when attached to the realty.

(b) 'Owner' includes the possessor of any interest in the land, a tenant, lessee, occupant or person in control of the premises.

(c) 'Recreational purpose' includes, and is limited to, any of the following, or any combination thereof: hunting, fishing, swimming, boating, camping, picnicking, hiking,

nature study, water skiing, water sports, and viewing or enjoying historical, archaeological, scenic or scientific sites.

(d) 'Charge' means the admission price or fee asked in return for invitation or permission to enter or go upon the land.

(e) 'Person' includes any person, regardless of age, maturity, or experience, who enters upon or uses land for recreational purposes.

§3. Except as specifically recognized by or provided in Section 6 of this Act, an owner of land owes no duty of care to keep the premises safe for entry or use by any person for recreational purposes, or to give any warning of a dangerous condition, use, structure, or activity on such premises to persons entering for such purposes.

§4. Except as specifically recognized by or provided in Section 6 of this Act, an owner of land who either directly or indirectly invites or permits without charge any person to use such property for recreational purposes does not thereby:

(a) Extend any assurance that the premises are safe for any purpose.

(b) Confer upon such person the legal status of an invitee or licensee to whom a duty of care is owed.

(c) Assume responsibility for or incur liability for any injury to person or property caused by an act of omission of such person or any other person who enters upon the land.

\* \* \*

§6. Nothing in this Act limits in any way any liability which otherwise exists:

(a) For willful or malicious failure to guard or warn against a dangerous condition, use, structure, or activity.

(b) For injury suffered in any case where the owner of land charges the person or persons who enter or go on the land for the recreational use thereof, except that in the case of land leased to the State or a subdivision thereof, any consideration received by the owner for such lease is not a charge within the meaning of this section."

■■ The Illinois Act has apparently been interpreted in only one case, *Miller v. United States* (N.D. Ill. 1976), 442 F. Supp. 555, which held that the Act was intended for those who permit open lands to be used recreationally, on a casual basis and did not apply to those who hold their property out to the public for recreational purposes and maintain their property for recreational use by enough people that the land is subject to the provisions of the Recreational Area Licensing Act. (Ill. Rev. Stat. 1975,

ch. 111½, pars. 761-785.) In *Stone Mountain Memorial Association v. Herrington* (1969), 225 Ga. 746, 171 S.E.2d 521, the Georgia court, in interpreting a virtually identical Georgia statute, rejected the argument that the statute was applicable merely to privately owned land such as land owned by farmers, persuasively reasoning that nothing on the face of the Act indicated an intention to so limit its effect. The court, therefore, held that the Act was applicable to a park. We have been unable to find any case which has held that these or similar statutes are only applicable when the land is thrown open to the public use. While we cannot adopt the restrictive holding of *Miller*, we do agree with it to the extent it held that the Act is applicable to those who permit open lands to be used recreationally on a casual basis, as the defendant has done here.

Paragraph three of the Act states that an owner owes no duty to keep the premises safe for entry or use by any person for recreational purposes or to give any warnings. "Person" is defined as including any person, including children, who enter upon land for recreational purposes. "Land" is defined as land located out of the corporate limits of any city, village or town and not subdivided. Nowhere in either paragraph three or either of these definitions is there a requirement that the land be open to all persons, all members of the public.

The plaintiff, however, urges that we read such a requirement into all of the provisions of the Act because paragraph one states that the purpose of the Act is to encourage owners of land to make it available to the public for recreational purposes by limiting their liability towards persons entering on it. It is true that statutes must be read as a whole (*Tri-County Landfill Co. v. Pollution Control Board* (1976), 41 Ill. App. 3d 249, 353 N.E.2d 316), that we must look to the object or purpose to be attained or subserved by the statute (*People v. Savaiano* (1975), 31 Ill. App. 3d 1049, 335 N.E.2d 553, *aff'd* (1976), 66 Ill. 2d 7, 359 N.E.2d 475), and that under certain circumstances the court may read into a statute words omitted from it to give effect to the legislative intent. (*Halberstadt v. Harris Trust & Savings Bank* (1972), 7 Ill. App. 3d 991, 289 N.E.2d 90, *aff'd* (1973), 55 Ill. 2d 121, 302 N.E.2d 64.) We are, however, not convinced that we should rewrite the statute here. It is true that the purpose of the statute is to encourage landowners to open up their property to members of the public. That does not mean the legislature intended to limit the application of the statute only to the landowners who open their lands to all members of the public. Many of these landowners are farmers who could hardly afford to open the land up to everyone at all times of the year, although they might be able to open it up during one season, such as hunting season or during winter, or on certain days of the week. No landowner would allow all persons to use the property at all times. If we were to read such a clause into the statute, doubts would

always exist as to whether the imposition of limitations on the use of the property, such as age restrictions, or hours of use, would prevent the landowner from claiming the benefit of the statute. Because of this doubt, the landowner would be reluctant to allow anyone to use the premises since, of course, he would be receiving no benefit for its use. (Ill. Rev. Stat. 1971, ch. 70, par. 36.) It is more reasonable to believe that the legislature, being aware of the growth of the doctrine of attractive nuisance (see, for example, *Gustafson v. Consumers Sales Agency, Inc.* (1953), 414 Ill. 235, 110 N.E.2d 865; *City National Bank v. City of Kankakee* (1957), 15 Ill. App. 2d 458, 146 N.E.2d 381 (abstract); Annot., 8 A.L.R.2d 1254 (1949)), and the urging of certain writers that the doctrine be expanded to natural conditions (see discussion in *Loney v. McPhillips* (1974), 268 Ore. 378, 382, 521 P.2d 340, 342), and of cases finding private owners or operators of picnic grounds liable, even though the park was open to the public without charge (*Gwynn Oak Park, Inc. v. Becker* (1940), 177 Md. 528, 10 A.2d 625; Annot., 67 A.L.R.2d 965 (1959)), wished to protect landowners whose property is used gratuitously, with or without their permission, for recreational purposes.

An examination of the rest of the Act reinforces our conclusion that the legislature never intended to limit the application of the statute to landowners opening up their land to the general public. As we already noted, section 3 of the Act provides that no landowner, as defined in the Act, owes any duty, except as provided in section 6, to any person using the land for recreational purposes. Section 4 in effect makes the same provision as to a landowner who either directly or indirectly invites or permits any person to use the land without charge. If section 3 is not to be rendered superfluous, it must be assumed that it applies where no permission, either express or implied, was extended. Obviously, if land is open to the general public, the general public is at least indirectly invited or permitted to use the land. Thus, if the Act is considered limited to land open to the general public, section 3 of the Act would appear to be superfluous.

Thus, since the plaintiff merely alleged that Stafford was guilty of certain careless and negligent acts, the trial court should not have stricken the affirmative defense and should have dismissed counts II and III. The statute only permits liability to be imposed for a willful or malicious failure to guard or warn against a dangerous condition, use, structure or activity. No such willful or malicious failure was alleged here. We cannot agree with the dicta of the court in *Miller v. United States* (N.D. Ill. 1976), 442 F. Supp. 555, that liability exists where by the exercise of reasonable care the existence of such dangerous conditions could have been discovered and become known. (Also see *McGruder v. Georgia Power Co.* (1972), 126 Ga. App. 562, 191 S.E.2d 305, *reversed on other grounds*

(1972), 229 Ga. 811, 194 S.E.2d 440.) Such an interpretation would defeat the whole purpose of the Act which is to encourage the opening up of land by granting an immunity which would not otherwise exist. Landowners have never been liable to licensees for defects of which the landowner was not aware and had no reason to be aware. (*Schoen v. Harris* (1969), 108 Ill. App. 2d 186, 246 N.E.2d 849, *appeal denied* (1969), 41 Ill. 2d 582.) Indeed, section 37(a) of the Act clearly provides that nothing in the Act shall be construed to "create a duty of care or ground of liability for injury to person or property."

Accordingly, the ruling of the trial court is reversed and the case remanded with directions.

Reversed and remanded.

JIGANTI, P. J., and LINN, J., concur.