Ray **COURSEY**, Appellant,

v.

**WESTVACO CORPORATION**, Appellee.

No. 89–SC–888–CL.

Supreme Court of Kentucky.

May 24, 1990.

Gary R. Haverstock, Haverstock & Bell, Murray, for appellant.

Richard C. Roberts, Whitlow, Roberts, Houston & Russell, Paducah, for appellee.

## ON CERTIFICATION FROM UNITED STATES DISTRICT COURT

WINTERSHEIMER, Justice.

This matter came before the United States District Court for the Western District of Kentucky at Paducah on a motion by Westvaco for summary judgment. The questions submitted to our court for certification are as follows:

1) Whether a party is protected under K.R.S. 411.190, the recreational use statute, when the party neither prevents nor affirmatively invites a person to enter the land in question.

2) Whether K.R.S. 411.190 precludes application of the attractive nuisance doctrine, and

3) Whether a party is required to dedicate the property in question for a public recreational purpose in order to be protected by K.R.S. 411.190.

Only three Kentucky cases have interpreted K.R.S. 411.190, and those cases arose out of injuries occurring on public property owned or controlled by a government entity. The cases dealing with the statute are *Sublett v. United States*, Ky., 688 S.W.2d 328 (1985); *Midwestern Inc. v. Northern Kentucky Community Center*, Ky.App., 736 S.W.2d 348 (1987) (discretion-

ary review denied) and *Page v. City of Louisville*, Ky.App., 722 S.W.2d 60 (1986). None of these cases relate directly to the points raised in this certification.

In 1981, Ray Coursey, who was then 13 years old, dove into a water-filled sand pit on property owned by Westvaco. He struck his head on the bottom and was immediately paralyzed. He has undergone major surgery and remains a quadriplegic.

The pertinent part of K.R.S. 411.190(4) is as follows:

Except as specifically recognized by or provided in Subsection 6, an owner of land who either directly or indirectly invites or permits without charge any person to use such property for recreational purposes does not thereby;

(A) Extend any assurance that the premises are safe for any purpose.

(B) Confer upon such person the legal status of an invitee or licensee to whom a duty of care is owed.

(C) Assume responsibility for or incur liability for any injury to persons or property caused by an act or omission of such persons.

The real question is whether a landowner must acknowledge in some way acquiescence to a person being on their property before one can come under the protection of the statute.

Forty-six states have enacted recreational use statutes. While the statutes take a variety of forms, they fall into roughly four variations of the model recreational use act proposed by the Council of State Governments in 1965. *The Council of State Governments Suggested State Legislation*, Vol. XXIV, p. 150 (1965). The four variations may be characterized as follows: The model act with coverage enlarged; the model act with coverage narrowed; the model act with statement of purpose deleted and other changes; and the model act essentially unchanged.

Two neighboring states have statutes of interest. In Ohio, the recreational use statute, O.R.C. 1533.18 and 1533.181, defines a recreational user as a person to whom permission has been granted. In Indiana, the

recreational use statute, I.C. 14–2–6–3, provides protection for the owner whether or not the person has permission to be on the property.

Kentucky has, along with fifteen other states, adopted the model act essentially unchanged. The recreational use statutes of these states contain nearly identical statements of purpose as found in K.R.S. 411.190. The purpose of the statute is to encourage property owners to make land and water areas available to the public for recreational purposes by limiting their liability toward persons entering thereon for such purposes.

Questions 1) and 3) are similar and will be answered together. Kentucky has no case law dealing with these specific issues so for help in certifying the law, this discussion will look to decisions from other states that have also enacted the model code essentially unchanged.

The heart of the controversy is whether this Court should interpret the recreational use statute broadly or narrowly. Coursey claims that because the statute's purpose is to encourage owners of land to make land and water areas available to the public for recreational purposes by limiting their liability, the statute should be interpreted more narrowly so as to accomplish the stated purpose of the statute. Coursey argues that because the legislative history for K.R.S. 411.190 is not available, this Court should consider the commentary to the Model Act, entitled Public Recreation on Private Lands: Limitation on Liability.

The commentary indicates that the act is designed to encourage availability of private lands by limiting the liability of owners to situations in which they are compensated for the use of their property. Coursey contends that in order to receive the benefit of limited liability the landowner must make the land available to the public. If the landowner is not required to affirmatively make his land available or at least have an intent to do so, then the legislation is in essence a blanket grant of immunity to landowners without any rational basis. *Gibson v. Keith*, Del.Supr., 492 A.2d 241 (1985) interprets a statute identical to K.R.S. 411.190 in a similar case where the plaintiff suffered paralytic injuries when he dove into shallow water in a gravel pit. The defendant argued that the claim was barred by the Delaware recreational use statute.

The Delaware Court held that an invitation or permission, direct or indirect, extended by a landowner to the public to enter without charge for recreational purposes is a *sine qua non* for invoking the statute's protective benefits. An owner is not required to make an explicit offer of land or water areas for recreational use to secure the statute's benefits. The Court further held that a landowner who undertakes affirmatively either to warn or bar the public from entry cannot come within the protection of the statute. In essence, a land or water area's particular conduciveness to recreational use and the owner's positive efforts to make such areas available without charge to the public determines a landowner's right to invoke the statute. *Id.* at 244.

Westvaco contends that to give the statute broad effect, the General Assembly chose words to allow the owner to come under the statute by doing nothing. To require the owner to do anything would limit the scope of this statute and withdraw land from recreational use by the public.

In support of this proposition, Westvaco relies on *Johnson v. Stryker Corp.*, Ill. App., 388 N.E.2d 932, 26 Ill.Dec. 931, 70 Ill.App.3d 717 (1979). In that case, the decedent died from injuries arising out of an accident which occurred when decedent dove into a pond on the property of the defendant. The trial court ruled that the Illinois recreational use statute was not available as a defense because the land was not open to the general public for recreational purposes.

The Illinois appellate court found that there was no requirement in the statute that the land be open to all members of the public and did not think that the legislature intended to limit the application of the statute only to landowners who open their land to all members of the public. They held it was more reasonable to believe the legisla-

ture, being aware of the growth of the doctrine of attractive nuisance wished to protect landowners whose property is used gratuitously, with or without their permission, for recreational purposes. *Johnson, supra,* 70 Ill.App.3d at 722, 26 Ill.Dec. 931, 388 N.E.2d 932.

Other states with virtually identical recreational use statutes have interpreted their statutes both broadly and narrowly. Kentucky will adopt the position that a landowner to come within the protection of the statute must show at a minimum, proof that the landowner knows that the public is making recreational use of his property, and proof of some words, actions or lack of action on his part from which it can be reasonably inferred that he intended to permit such use to be made of his property.

■ It is the opinion of this Court that a landowner must show he knew and condoned the public making recreational use of his property, and by the landowner's words, actions or lack of action it must be able to be reasonably inferred the landowner intended to permit such use. We answer the first question, *No.*

### II

■ The second issue is whether K.R.S. 411.190 precludes application of the attractive nuisance doctrine.

Subsection (3) states that the owner has "no duty of care to keep the premises safe...."

Subsection (4) states that the owner extends no assurances, confers no status or assumes no responsibility.

Subsection (6) specifically states the liability of the landowner.

The statute makes no specific mention of young people, for whose benefit the attractive nuisance doctrine exists. The words of the statute are absolute and unqualified. There is no duty to anyone.

The General Assembly must be assumed to have intended to mean what it enacted. An unambiguous statute is to be applied without any resort to outside aids. *Delta Airlines, Inc. v. Com., Revenue Cabinet,* Ky., 689 S.W.2d 14 (1985).

The tendency of this Court is to restrict, not enlarge, the attractive nuisance doctrine. *Harris v. Cozatt, Inc.,* Ky., 427 S.W.2d 574 (1968). *Helton v. Montgomery,* Ky.App., 595 S.W.2d 257 (1980) merely applies the doctrine without any enlargement.

Other states have specifically included sections dealing with the attractive nuisance doctrine in their recreational use statutes. This lends further support to the theory that if the General Assembly meant for the statute to include the application of the attractive nuisance doctrine they would have included it in the statute as other states have done. K.R.S. 411.190 specifically deals with the responsibilities that the landowners owe to people who use their land for recreational purposes. Subsection (6) specifically states the situations in which the landowner could incur liability. In view of the fact that the statute deals with these issues and not the attractive nuisance doctrine it would be correct to presume that had the legislature intended for the attractive nuisance doctrine to be preserved, they would have explicitly done so. We answer the second question, *Yes.*

### III

■ To require a formal dedication of the land would defeat the purpose of the Act by reducing the number of owners who would dedicate their property. In lieu of a formal dedication, we hold that a landowner must at a minimum show he knew and condoned the public making use of his land for a recreational purpose, and by the landowner's words, actions or lack of action it must be able to be reasonably inferred the landowner intended to put his land to such use. We answer the third question, *No.*

STEPHENS, C.J., and GANT and VANCE, JJ., concur.

LEIBSON, J., files a separate opinion dissenting in part, in which COMBS and LAMBERT, JJ., join.

LEIBSON, Justice, dissenting in part.

Respectfully, I dissent from the answer we give to the second issue certified to our Court, which is:

"Whether K.R.S. Section 411.190 precludes application of the attractive nuisance doctrine[.]"

The Majority Opinion answers this question "yes." I disagree. This is a humanitarian doctrine of longstanding in the common law, designed to protect children from "unreasonable risks" created by landowners when their injury is foreseeable and the likelihood of injury far outweighs the "burden of eliminating the danger." *See Restatement, Second, Torts,* § 339, "Artificial Conditions Highly Dangerous to Trespassing Children." There is no reason to believe the General Assembly has abandoned this humanitarian doctrine.

The effect of KRS 411.190, the recreational use statute, if properly understood, is to *change the status* of the recreational user from trespasser to licensee where he is now making recreational use of the landowner's property, "encourage[d]" to do so, "directly or indirectly," by a landowner who "invites or permits [such use] without charge." Then, after the statute changes the recreational user's status to licensee where the act applies, in Subsection (6)(a) the statute changes the duty owed to the recreational user back to the limited duty owed to a trespasser. The only logical interpretation of the effect of the recreational use statute when a child is involved is that the child is now a licensee by reason of the statute, but is still owed the same duty as before when he was a trespasser. Since a trespassing child is entitled to the protection of the attractive nuisance doctrine where it applies, a child licensee should be entitled to at least equal protection. The statute does not preclude application of the attractive nuisance doctrine. Neither should we.

Whether the attractive nuisance doctrine would apply in the present case, given a "yes" answer to question two, would depend on facts not clear from the certification from the United States District Court: whether the injury was "caused by an artificial condition upon the land," whether the "possessor knows or has reason to know that children are likely to trespass," and whether "the condition is one of which the possessor knows or has reason to know and which he realizes or should realize will involve an unreasonable risk ... to such children." *Restatement, Second, Torts* § 339.

Where the recreational use statute does *not* apply, which is all cases involving trespassers except those where the landowner has intentionally encouraged recreational use, the attractive nuisance doctrine still applies to trespassing children. It defies reason to give the child *less* protection than he would have as a trespasser because the landowner has encouraged his use.

In the present case we are advised by brief that the landowner's agents have testified that the recreational use being made of the property was unknown. If true, the recreational use statute does not apply to the case at hand. But the attractive nuisance doctrine for trespassing children should still apply, provided there is proof of the various elements necessary to its application. This is so because, whether or not the statute applies, the duty owed to the child is the duty owed to a child trespasser.

COMBS and LAMBERT, JJ., join this dissent.