495 N.W.2d 269 (1993)
242 Neb. 389
Kelly HOLDEN, a Minor, by and through her Mother and Next Friend, Karen HOLDEN, Appellant,
v.
Howard SCHWER, Appellee.
No. S-90-259.
Supreme Court of Nebraska.
February 12, 1993.
*270 Joseph B. Muller, of The Law Offices of Ronald J. Palagi, P.C., Omaha, for appellant.
Thomas A. Grennan, of Gross & Welch, P.C., Omaha, for appellee.
HASTINGS, C.J., and BOSLAUGH, WHITE, CAPORALE, SHANAHAN, GRANT, and FAHRNBRUCH, JJ.
GRANT, Justice.
Plaintiff-appellant, Kelly Holden, a minor, by and through her mother and next friend, Karen Holden, filed her petition in the Sarpy County District Court against defendant-appellee, Howard Schwer, seeking damages for injuries allegedly incurred as a result of defendant's ordinary negligence and because of defendant's violation of Neb.Rev.Stat. § 54-601 (Reissue 1988) (making dog owners strictly liable for certain damages done by dogs). Plaintiff alleged that she was on defendant's property on July 4, 1988, and was injured while riding a three-wheeled vehicle when, as a result of actions by defendant's dog, she hit a barbed wire fence.
In his answer to plaintiff's petition, defendant denied that § 54-601 had any application to plaintiff's case and denied that he owed any duty of ordinary care to plaintiff because of the provisions of the Nebraska Recreation Liability Act, Neb.Rev.Stat. §§ 37-1001 to 37-1008 (Reissue 1988). Defendant later filed a motion for summary judgment. After a hearing, the court sustained the motion and entered judgment in favor of defendant, dismissing plaintiff's petition. Plaintiff timely appealed to this court.
*271 Plaintiff, in substance, assigns three errors, alleging that the trial court (1) "erred, as a matter of law, when it granted summary judgment when there were genuine issues of material fact, as well as disputes concerning the inferences which could be drawn from the undisputed facts"; (2) "erred in its application of the law regarding liability of dog owners"; and (3) erred in its application of the Nebraska Recreation Liability Act. We affirm.
The record shows that on July 4, 1988, the plaintiff, who was then 15 years old, was attending a family picnic of a friend, Jessica Romick. The picnic took place on the lake property of defendant's farm near Papillion.
Defendant's farm consists of 140 acres, 120 of which are devoted to agricultural use. The remaining 20 acres, including a 6-acre lake, are used primarily for recreational purposes. Defendant often gave others permission to use this land without charge for hunting, fishing, and other purposes. On the day of the accident, defendant had given the Romick family permission to use the land for the picnic.
On the day of the accident, plaintiff was driving a three-wheeler upon which Romick was riding as a passenger. The vehicle was neither owned nor furnished by defendant. Defendant's dog called Smokey, a 6-or 7-month-old German shepherd puppy, had been running alongside of and around the vehicle throughout the day as plaintiff and others drove it down the farm lane.
As plaintiff was driving the three-wheeler, the dog stopped in the lane, either sitting down or simply standing still. Plaintiff veered in order to avoid the dog and ran into a fence near the lane. She alleges that she suffered cuts and bruises, resulting in permanent scars.
In appellate review of a summary judgment, the court views the evidence in a light most favorable to the party against whom the judgment is granted and gives such party the benefit of all reasonable inferences deducible from the evidence. Murphy v. Spelts-Schultz Lumber Co., 240 Neb. 275, 481 N.W.2d 422 (1992); Spittler v. Nicola, 239 Neb. 972, 479 N.W.2d 803 (1992). Moreover, summary judgment is to be granted only when the pleadings, depositions, admissions, stipulations, and affidavits in the record disclose that there is no genuine issue as to any material fact or as to the ultimate inferences that may be drawn from those facts and that the moving party is entitled to judgment as a matter of law. Murphy v. Spelts-Schultz Lumber Co., supra; Moore v. Hartford Fire Ins. Co., 240 Neb. 195, 481 N.W.2d 196 (1992); Barelmann v. Fox, 239 Neb. 771, 478 N.W.2d 548 (1992).
Plaintiff first argues that § 54-601, the "dog bite statute," serves to impose liability upon the defendant. The statute, as in effect in 1988, provided in part:
Dogs are hereby declared to be personal property for all intents and purposes, and the owner or owners of any dog or dogs shall be liable for any and all damages that may accrue (1) to any person, other than a trespasser, by reason of having been bitten by any such dog or dogs, and (2) to any person, firm or corporation by reason of such dog or dogs killing, wounding, worrying, or chasing any person or persons or any sheep or other domestic animals belonging to such person, firm or corporation.
Section 54-601 has been applied a number of times by this court and has been found to make an owner strictly liable for injuries inflicted by his dog without any proof that the owner knew of the dog's dangerous propensities. See, McCullough v. Bozarth, 232 Neb. 714, 442 N.W.2d 201 (1989); Paulsen v. Courtney, 202 Neb. 791, 277 N.W.2d 233 (1979). We have recognized, however, that not all actions by dogs create liability for their owners under § 54-601. In enacting the statute, the Legislature "removed the common law restriction of proving scienter or knowledge of the dangerous propensities of dogs, but only as it applied to the actions of dogs specified in the statute." Donner v. Plymate, 193 Neb. 647, 649, 228 N.W.2d 612, 614 (1975).
In Donner, the plaintiff sustained an injury when the defendant's dog, while exercising, *272 ran into the plaintiff's knee while she was stepping back and caused her to fall. The plaintiff acknowledged that the dog was in a playful mood, and when asked to describe what the dog was doing when the injury happened, she answered: "`Chasing at me and I stepped back, took one step and he hit my right knee.'" Id. at 648, 228 N.W.2d at 613.
The Donner plaintiff further described the dog's activities as chasing her and stated that the dog was not mean, did not growl at her, and seemed playful; that the dog would run in circles during the exercise periods and had run at her on at least a dozen occasions; and that this was done by the dog in an effort to get exercise and be playful.
In determining whether liability should be imposed on owners for their dogs' playful acts, this court stated:
The purpose of the original statute was to protect domestic animals, which are ordinary prey of dogs. Brown v. Graham, 80 Neb. 281, 114 N.W. 153 [(1907) ]. This protection was extended to persons in 1961 by L.B. 205, the history of which indicates a legislative concern for children and adults being attacked by dogs in the Douglas County area.
193 Neb. at 649, 228 N.W.2d at 614.
This court concluded that the plaintiff in Donner was not entitled to relief because "[w]hen the words killing, wounding, worrying, or chasing as used in section 54-601, R.R.S.1943, are read together they exclude playful and mischievous acts of dogs." 193 Neb. at 650, 228 N.W.2d at 614. We note that "worrying," in the sense used in § 54-601, means harassing "by tearing, biting, or snapping esp. at the throat (wolves [worrying] the sheep)." Webster's Third New International Dictionary, Unabridged 2636 (1981).
In the case at bar, the actions of the defendant's dog called Smokey, a 6-or 7-month-old puppy, were almost identical to those of the dog in Donner. The passenger on the vehicle, Romick, stated that the dog was just being playful when she and the plaintiff were driving along the lane and that he did not appear to be vicious "at all." Plaintiff stated that the dog was not actually "chasing" the vehicle, but would run behind it, in front of it, and in large circles around it. Janis Smith, the mother of Romick, was a witness to the accident, and she stated in her deposition that "the dog doesn't have a mean bone in his body. He was not being vicious in any way. He was acting like the three or four month [sic] puppy that he was." She also described the dog as being playful as he was running alongside and around the three-wheeler. She testified that "he was definitely barking at the vehicle. When the vehicle stopped and shut off when the boys rode up, he made no further movements of any kind. He just sat there and waited for the vehicle to start up again so he could have a good time again."
The factual situation shows that plaintiff's injuries were caused, in part, by the playful and mischievous acts of defendant's dog. As we held in Donner, such actions are not within the scope of protection afforded by § 54-601. The motion for summary judgment was properly sustained by the trial court as to this issue.
Plaintiff next contends that the Nebraska Recreation Liability Act does not insulate the defendant from liability. Plaintiff concedes that if the Recreation Liability Act applies to the factual situation present in this case, no liability would attach. The threshold question, therefore, is whether the act applies to the incident before us.
The stated purpose of the Recreational Liability Act is to "encourage owners of land to make available to the public land and water areas for recreational purposes by limiting their liability toward persons entering thereon and toward persons who may be injured or otherwise damaged by the acts or omissions of persons entering thereon." § 37-1001.
Accordingly, "an owner of land owes no duty of care to keep the premises safe for entry or use by others for recreational purposes, or to give any warning of a dangerous condition, use, structure, or activity on such premises to persons entering *273 for such purposes." § 37-1002. The act further states that
an owner of land who either directly or indirectly invites or permits without charge any person to use such property for recreational purposes does not thereby (1) extend any assurance that the premises are safe for any purpose, (2) confer upon such persons the legal status of an invitee or licensee to whom a duty of care is owed, or (3) assume responsibility for or incur liability for any injury to person or property caused by an act or omission of such persons.
§ 37-1003. An owner is still liable, however, "(1) for willful or malicious failure to guard or warn against a dangerous condition, use, structure, or activity, or (2) for injury suffered in any case where the owner of land charges the person or persons who enter or go on the land." § 37-1005. Therefore, as this court has held, "the owner of a recreational facility is not liable for ordinary negligence unless a fee was charged for the right to enter the facility." Cassio v. Creighton University, 233 Neb. 160, 165, 446 N.W.2d 704, 709 (1989).
The history of the act shows that it was passed out of a concern that landowners, such as farmers, who allow people to use their land for recreation should be protected. See Agriculture and Recreation Committee Hearing, L.B. 280, 75th Leg. (March 25, 1965). The primary point of contention between the parties in the case at bar is whether the act applies to persons, such as the defendant, who do not open their land to the public at large, but who use their discretion in granting permission to enter.
Plaintiff argues that for the defendant to be protected by the act, he must give "carte blanche permission" to the members of the public at large to use his property in any way they see fit. Brief for appellant at 9. There is nothing in the act, however, which would support such a contention. Such a position would defeat the purpose of the act. The legislative history shows that the purpose of the act is to "encourage the landowners in our state ... to make recreational facilities available to those that like to hunt or fish on their property by changing the liability angles... that ... exist." Floor Debate, L.B. 280, Agriculture and Recreation Committee, 75th Leg. 1159 (April 30, 1965). It would not encourage landowners to allow others to use their property if, to come under the protection of the act, they had to allow any person, at any time, under any circumstances, to come onto their property and use it in any manner that person saw fit.
While this precise issue has not been addressed in the Nebraska cases applying the act, because the act is a model liability relief law drafted by the Council of State Governments, its application by other jurisdictions provides guidance.
In Johnson v. Stryker Corp., 70 Ill. App.3d 717, 26 Ill.Dec. 931, 388 N.E.2d 932 (1979), a teenager suffered fatal injuries after diving into a shallow pond on the defendant owner's property. The owner had permitted his land to be used for recreational purposes on a casual basis by some, but not all, members of the general public. The Illinois Recreational Use of Land and Water Areas Act statement of purpose, Ill.Rev.Stat. ch. 70, sec. 31 (1971), was nearly identical to its Nebraska counterpart, § 37-1001. The Illinois court held that the recreational land use act barred the suit and stated that it was
unable to find any case which has held that these or similar statutes are only applicable when the land is thrown open to the public use.... [T]he Act is applicable to those who permit open lands to be used recreationally on a casual basis, as the defendant has done here.
70 Ill.App.3d at 721, 26 Ill.Dec. at 933, 388 N.E.2d at 934.
The Supreme Court of Kentucky decided a case which also squarely addresses this issue. In Coursey v. Westvaco Corp., 790 S.W.2d 229 (Ky.1990), a 13-year-old plaintiff sued for injuries sustained when he dove into a water-filled sandpit located on the defendant's property. Kentucky is one of at least 15 other states that, like Nebraska, has adopted, essentially unchanged, the recreational land use act promulgated by the Council of State Governments. See *274 24 Council of State Governments, Suggested State Legislation 150 (1965). The plaintiff in Coursey, as does plaintiff Holden, argued that for the defendant to come under the protection of the act, a dedication of his property to the public was necessary. The Kentucky court held that "[t]o require a formal dedication of the land would defeat the purpose of the Act by reducing the number of owners who would" allow their land to be used by the public. 790 S.W.2d at 232. Therefore, as to the plaintiff's contention in Coursey that a landowner had to open his land to all members of the public in order to be protected under the act, the Kentucky Supreme Court answered, simply, "No." (Emphasis in original.) 790 S.W.2d at 232.
Based on our consideration of the reasoning of the Coursey and Johnson courts, among others, we hold that the Recreation Liability Act does not require a landowner to fully dedicate his property to the public before the landowner comes under the protection of the act. Rather, in order to facilitate the purpose of the act, a landowner need allow only some members of the public, on a casual basis, to enter and use his land for recreational purposes to enjoy the protection of the act. Defendant's acts of allowing some members of the public, including plaintiff, to use his land without charge satisfy the first tier of the act's requirementsmaking his land available to the public.
A secondary contention of plaintiff is that even if the defendant is considered to be part of the class protected under the first part of the act, the second part of the act is not satisfied because plaintiff was not injured while pursuing a recreational activity. Plaintiff seeks to characterize her use of the three-wheeler as mere transportation and claims that this would place her venture outside of the act. Although this court has not addressed a case which defines recreational activities, guidance from other jurisdictions is again available.
In Singletary v. Crown Zellerbach, 554 So.2d 846 (La.App.1989), the Louisiana Court of Appeal decided a case which is squarely on point to the one at bar. The plaintiff in Singletary brought an action to recover for injuries sustained in an accident involving a three-wheeler which was being operated on property leased by the defendant. While driving the vehicle down a dirt road on the property, the plaintiff hit a gate and was injured. The plaintiff's main contention was that riding a three-wheeler did not constitute "recreational activity." Id. at 848. Applying a recreational land use act almost identical to Nebraska's, the Louisiana court found that "the purpose of the recreational land use statutes is to encourage landowners to make land and water areas available to the public for recreational purposes." Id. The court specifically held that "the activity of riding three-wheelers on the property in question during a camping trip is a recreational activity within the scope of [Louisiana's recreational land use act]," and, therefore, no liability attached to the landowner. Id.
In the instant case, the activity of riding the three-wheeler down the defendant's farm lane cannot be construed as mere transportation, but was clearly a recreational activity. Although an aspect of the activity was transportation, the primary use of the three-wheeler was for fun and enjoyment. The act does not exclude an activity simply because the activity may have a secondary benefit as transportation. We find plaintiff's argument that her activities constituted only transportation and not recreation to be without merit.
For the reasons cited above, the trial court's granting of summary judgment in favor of defendant, Howard Schwer, is affirmed.
AFFIRMED.
WHITE, Justice, dissenting.
In Donner v. Plymate, 193 Neb. 647, 228 N.W.2d 612 (1975), this court held that the mens rea of a dog was an essential element of the application of Neb.Rev.Stat. § 54-601 (Reissue 1988). The holding that we are, or any juror is, capable of judging whether a dog is at a given time playful or malicious is preposterous. We could, with equal reliability, predict the future from *275 the examination of a goat's entrails. I would reverse out of hand the holding in Donner.
I submit further that the Recreation Liability Act does not protect the landowner from the application of the strict liability of § 54-601. I would reverse.