RENDERED:  FEBRUARY 14, 2025; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2023-CA-1386-MR

TERRY SPAINHOWARD,
JAMES D. DONAHOO,
JEFFERY DONAHOO, AND
BRADLEY EASTWOOD                                                    APPELLANTS

v.           APPEAL FROM WEBSTER CIRCUIT COURT
             HONORABLE DANIEL M. HEADY, JUDGE
             ACTION NO. 21-CI-00050

TOMMY FRASIER                                                        APPELLEE

OPINION
AFFIRMING

** ** ** ** **

BEFORE:  ECKERLE, L. JONES, AND KAREM, JUDGES.

KAREM, JUDGE:  James Donahoo, Jeffery Donahoo, Bradley Eastwood, and

Terry Spainhoward (herein referred to collectively as "Spainhoward") brought suit

against Tommy Frasier ("Frasier") alleging trespass.  Spainhoward specifically

alleged Frasier and his invitees, in an effort to access his property for recreational

purposes, trespassed and traversed their properties without their permission. In defense, Frasier maintained the general public has the right to use the road in question and, alternatively, there exists an easement by prescription and/or a quasi-easement allowing him to use the road. A jury trial was held August 31, 2023, wherein, following presentation of evidence, a motion for directed verdict was made by Spainhoward and overruled by the trial court. Subsequently, the jury found for Frasier which Spainhoward now appeals. After careful consideration of the law and facts, we affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

At issue in this appeal is the use of a single-lane dirt/gravel road referred to by several different monikers throughout the litigation. For clarity's sake, it will be referred to as the Road.

It is undisputed that Frasier used the Road, crossing Spainhoward's properties, to access his own property. All parties agree that Frasier's property was divided by the installation of Interstate 69, and the Road is the only means by which Frasier can access the parcel of his land on which sits a cabin and a deer stand.

At the initiation of this case Spainhoward petitioned the court for, and was granted, a temporary restraining order ("TRO") preventing Frasier from using

the Road. Following a hearing several months later, the TRO was dismissed, and the litigation proceeded to trial following unsuccessful mediation.

At trial, Frasier testified that he and his family members used the Road since his acquisition of the property in 1999. However, Frasier maintained that other family members, and the general public, used the Road dating back generations. Specifically, he alleged that it was used by police and by powerline workers and that the Road was used to access both the Eastwood Cemetery and a water tower. Frasier further testified that the Road is well-established in historical maps and legal records as running east from Sebree, Kentucky, to the water tower and all the way to Green River where a ferry once operated.

Spainhoward disputed Frasier's history of the Road and denied it was ever used for public purposes or maintained by the county. He testified that it ended at the cemetery. Additional testimony was given that a gate was erected across the Road around 2006 following issues with Allen Frasier, Frasier's father, who owned the land prior to Frasier. It was alleged that Allen Frasier bulldozed a path from the cemetery across Spainhoward's properties to his tract of land. The gate was ultimately removed but replaced by another gate erected by Spainhoward which was destroyed by Frasier. The destroyed gate was replaced with two steel poles filled with concrete, one situated on either side of the road, connected by a cable. All plaintiffs testified they had never given Frasier permission to cross their

land but had given each other permission to use the Road to reach their respective properties. Various maps and deeds were accepted into evidence.

At the conclusion of the evidence, Spainhoward motioned the court for a directed verdict which was denied. Ultimately, the jury returned a verdict in favor of Frasier finding the existence of both a public road and an easement by prescription.

Spainhoward makes three arguments on appeal:

1) Kentucky's Recreational Use Statute, KRS[1] 411.190, bars Frasier's claims of prescriptive easement and public road.

   a.) The judge erred in denying Spainhoward's motion for summary judgment.

   b.) The judge erred in denying Spainhoward's motion for a directed verdict.

2) The trial judge erred in denying Spainhoward's motion for a directed verdict under the theory of public road.

3) The trial judge was in error allowing Frasier to revive [his] defense of prescriptive easement on the day of trial.

---

[1] Kentucky Revised Statute.

## ANALYSIS

## PRELIMINARY ISSUES

As an initial matter, we must address the deficiency of Spainhoward's appellate brief. Their argument section fails to make "reference to the record showing whether the issue was properly preserved for review and, if so, in what manner" as required by RAP[2] 32(A)(4). We require a statement of preservation:

> so that we, the reviewing Court, can be confident the issue was properly presented to the trial court and therefore, is appropriate for our consideration. It also has a bearing on whether we employ the recognized standard of review, or in the case of an unpreserved error, whether palpable error review is being requested and may be granted.

*Oakley v. Oakley*, 391 S.W.3d 377, 380 (Ky. App. 2012).

"Our options when an appellate advocate fails to abide by the rules are: (1) to ignore the deficiency and proceed with the review; (2) to strike the brief or its offending portions, [RAP 31(H)(1)]; or (3) to review the issues raised in the brief for manifest injustice only[.]" *Hallis v. Hallis*, 328 S.W.3d 694, 696 (Ky. App. 2010) (citing *Elwell v. Stone,* 799 S.W.2d 46, 47 (Ky. App. 1990)). In our discretion, we will ignore the deficiency if we are able to determine from our review of the record that their argument was properly preserved. However, any

---

[2] Kentucky Rules of Appellate Procedure.

argument where no such finding can be readily made, said argument will be disregarded for review.[3]

## STANDARD OF REVIEW

Spainhoward asserts that the trial court erred in denying his motion for summary judgment and allowing Frasier to proceed to jury trial when his claims should have been precluded by Kentucky's Recreational Use statute. He asks for a review and reversal of the court's decision. We lack jurisdiction to undertake such a review.

In *Erie Insurance Exchange v. Johnson*, 647 S.W.3d. 198 (Ky. 2022), an insurance company, following a trial on the merits, asked the Supreme Court to review the trial court's decision denying their pre-trial motion for summary judgment. The Court declined to do so opining that, absent one of a handful of exceptions, appellate courts lack jurisdiction for such a review.

> When we review an order for summary judgment, "we determine whether the record supports the trial court's conclusion that there is 'no genuine issue as to any material fact and the [sic] moving party is entitled to judgment as a matter of law.'" *Foreman v. Auto Club Prop. Cas. Ins. Co.*, 617 S.W.3d 345, 349 (Ky. 2021) (quoting CR[4] 56.03).

---

[3] While it should be noted Spainhoward provides citations to the record throughout the Statement of the Case section of their brief, the Argument section is completely devoid of any such reference. We caution counsel to provide citations to the record throughout their brief in the future or risk incurring sanctions from this Court.

[4] Kentucky Rules of Civil Procedure.

Outside of the context of immunity, appellate courts only have jurisdiction to review *grants* of summary judgment; a denial of summary judgment is in most cases unreviewable until a final judgment is rendered at the trial court. *Auslander Props., LLC v. Nalley*, 558 S.W.3d 457, 462 (Ky. 2018) ("An order denying a motion for summary judgment is not appealable.") (citations omitted). There is an exception to this rule where "(1) the facts are not in dispute, (2) the only basis of the ruling is a matter of law, (3) there is a denial of the motion, and (4) there is an entry of a final judgment with an appeal therefrom." *Id.* (citing *Abbott v. Chesley*, 413 S.W.3d 589, 602 (Ky. 2013); *Transp. Cabinet, Bureau of Highways v. Leneave*, 751 S.W.2d 36, 37 (Ky. App. 1988)).

We cannot review this denial of summary judgment under any exception. Although the facts are not in dispute, the only basis of the ruling is a matter of law, and there is a denial of the motion, Erie lacks an entry of a final judgment on appeal to which it can attach its appeal of the summary judgment denial. *See id.* Because Erie seeks review of a denial of summary judgment outside of an exception, it is outside the Court's jurisdiction for review.

*Erie Insurance Exchange v. Johnson*, 647 S.W.3d 198, 202 (Ky. 2022).

Similarly, because the case *sub judice* fails to fall within any of the few exceptions, we move on to Spainhoward's argument that they were entitled to a directed verdict.

Because the trial court denied Spainhoward's motion for a directed verdict, we are limited to reviewing the decision for clear error:

When engaging in appellate review of a ruling on a motion for directed verdict, the reviewing court must

-7-

ascribe to the evidence all reasonable inferences and deductions which support the claim of the prevailing party.

Once the issue is squarely presented to the trial judge, who heard and considered the evidence, a reviewing court cannot substitute its judgment for that of the trial judge unless the trial judge is clearly erroneous. In reviewing the sufficiency of evidence, the appellate court must respect the opinion of the trial judge who heard the evidence. A reviewing court is rarely in as good a position as the trial judge who presided over the initial trial to decide whether a jury can properly consider the evidence presented.

Generally, a trial judge cannot enter a directed verdict unless there is a complete absence of proof on a material issue or if no disputed issues of fact exist upon which reasonable minds could differ. Where there is conflicting evidence, it is the responsibility of the jury to determine and resolve such conflicts, as well as matters affecting the credibility of witnesses. The reviewing court, upon completion of a consideration of the evidence, must determine whether the jury verdict was flagrantly against the evidence so as to indicate that it was reached as a result of passion or prejudice. If it was not, the jury verdict should be upheld.

*Bierman v. Klapheke*, 967 S.W.2d 16, 18-19 (Ky. 1998).

**Kentucky's Recreational Use Statute**

In their motion for directed verdict, Spainhoward maintained, as a matter of law, Kentucky's Recreational Use Statute, KRS 411.190, precluded Frasier from making claims of public road and easement by prescription when accessing his land. In making his argument, Spainhoward cites the last subsection

-8-

of the Recreational Use Statute, KRS 411.190(8), as authority to disallow Frasier's claims. Specifically, KRS 411.190(8) states, "[n]o action for the recovery of real property, including establishment of prescriptive easement, right-of-way, or adverse possession, may be brought by any person whose claim is based on use solely for recreational purposes." However, the Supreme Court has repeatedly explained the process by which a statute should be interpreted. The Court has stressed the importance of understanding Legislative intent by reading the statute *as a whole*:

> As we stated in *Saxton v. Commonwealth*, 315 S.W.3d 293, 300 (Ky. 2010), "[d]iscerning and effectuating the legislative intent is the first and cardinal rule of statutory construction." Legislative intent is derived from the plain reading of a statute's language unless there is ambiguity. *See MPM Fin. Group, Inc. v. Morton*, 289 S.W.3d 193, 197 (Ky. 2009) (citing *Whittaker v. McClure*, 891 S.W.2d 80, 83 (Ky. 1995)).
>
> Generally, "[t]he statute must be read as a whole and in context with other parts of the law. All parts of the statute must be given equal effect so that no part of the statute will become meaningless or ineffectual." *Lewis v. Jackson Energy Co-op. Corp.*, 189 S.W.3d 87, 92 (Ky. 2005). Likewise, when construing multiple statutes, the statutes are read "in harmony with one another in order to effectuate all statutes, if possible." *Castle v. Commonwealth*, 411 S.W.3d 754, 757-58 (Ky. 2013) (citing *Ledford v. Faulkner*, 661 S.W.2d 475, 476 (Ky. 1983)). In construing statutes, we "presume that the General Assembly did not intend an absurd statute or an unconstitutional one." *Shawnee Telecom Res., Inc. v. Brown*, 354 S.W.3d 542, 551 (Ky. 2011) (citing *Layne v.*

*Newberg*, 841 S.W.2d 181 (Ky. 1992)).

*Kentucky Department of Corrections v. Dixon*, 572 S.W.3d 46, 48-49 (Ky. 2019).

Notably, the Recreational Use Statute is made up of eight subsections although Spainhoward argues for the application of just one small component of the full text. The language in KRS 411.190 disregarded by Spainhoward provides the context in which the Recreational Use Statute applies. KRS 411.190(2) states, "[t]he purpose of this section is to encourage owners of land to make land and water areas available to the public for recreational purposes by limiting their liability toward persons entering thereon for such purposes."

The Kentucky Supreme Court had the opportunity to analyze and discuss Kentucky's General Assembly's passage, and the subsequent application of, the Recreational Use Statute in *Coursey v. Westvaco Corporation*, 790 S.W.2d 229 (Ky. 1990). The Court began by stating that "[t]he purpose of the statute is to encourage property owners to make land and water areas available to the public for recreational purposes by limiting their liability toward persons entering thereon for such purposes." *Id*. at 231. This analysis by the Court further undermines Spainhoward's argument for application of the statute as the Court concluded:

> to come within the protection of the statute [a landowner] must show at a minimum, proof that the landowner knows that the public is making recreational use of his property, and proof of some words, actions[,] or lack of action on his part from which it can be reasonably

-10-

inferred that he *intended to permit* such use to be made of his property.

*Id*. at 232 (emphasis added).  Moreover:

> To require a formal dedication of the land would defeat the purpose of the Act by reducing the number of owners who would dedicate their property.  In lieu of a formal dedication, we hold that a landowner must at a minimum show he *knew and condoned the public making use of his land for a recreational purpose*, and *by the landowner's words, actions*[,] *or lack of action it must be able to be reasonably inferred the landowner intended to put his land to such use*.

*Id*. (emphasis added).  While it is undisputed that Spainhoward had knowledge of Frasier's use of his land, it is also undisputed that Spainhoward erected a gate to prevent that use.

Moreover, Spainhoward does not allege Frasier and his invitees are using the Spainhoward property for recreational purposes.  Spainhoward's complaint arises from Frasier *traversing* their properties to access his own property to hunt, nature watch, plant a garden, relax, and enjoy life.  However, it is wholly irrelevant how Frasier uses his own property.  The Recreational Use Statute, as outlined above, protects landowners from liability when they allow their land to be used for recreational purposes.  All allegations against Frasier have been limited to Frasier and his invitees crossing the Appellants' properties to access his own.  Because the recreational use is on Frasier's own land, and not that of Spainhoward, the Recreational Use Statute is inapplicable to the case *sub judice*.

We therefore affirm the court's finding that KRS 411.190 is inapplicable to the case *sub judice* and uphold the denial of Spainhoward's motion for a directed verdict.

**Public Road**

Spainhoward argues the trial court erred in denying their directed verdict motion in relation to Frasier's claim that a public road existed. As noted above, Spainhoward fails to provide a preservation statement for this argument. However, a review of the recording of the trial reveals that, following a bench discussion of the Recreational Use Statute, Spainhoward indeed made a motion for directed verdict on the basis that no public road existed. In fact, there was a robust discussion regarding Frasier's claim. The court ultimately overruled the motion from the bench. However, the trial court's Trial Order and Judgment fails to address this motion. The court's detailed Trial Order and Judgment makes findings only as to Spainhoward's argument for a directed verdict based on the application of the Recreational Use Statute. The court does not address the separate motion for directed verdict based on Frasier's failure to establish the existence of a public road. More importantly, there is nothing in the record to indicate that Spainhoward brought this deficiency to the court's attention or that this oversight was corrected, a mandatory requirement pursuant to CR 52.04 which states:

> A final judgment shall not be reversed or remanded
> because of the failure of the trial court to make a finding

of fact on an issue essential to the judgment unless such failure is brought to the attention of the trial court by a written request for a finding on that issue or by a motion pursuant to Rule 52.02.

The Supreme Court solidified the responsibility of the parties to bring an oversight such as this to the court's attention in *Wieland v. Freeman*, 671 S.W.3d 253 (Ky. 2023). In *Wieland*, claims of defamation and breach of contract were brought by a tenant against a landlord. The trial court issued a summary judgment against the landlord in relation to the defamation claim but did not address the breach of contract claim. Although the court mistakenly believed the plaintiff did not respond to a court order asking if there were any outstanding claims, the Supreme Court found that, pursuant to CR 52.04, the parties' failure to bring the mistake to the court's attention to address the deficiency precluded them from appellate review.

> The procedural history we are called to review is this:
>
> The trial court erroneously believed that Wieland and Hot Rods had failed to respond to its order requesting a listing of outstanding claims. Because of this, the trial court believed there were no outstanding claims and therefore failed to adjudicate the contract claim. Then, Wieland and Hot Rods failed to either move to correct the trial court's erroneous beliefs or move for a ruling on their remaining claim. As the Court of Appeals has correctly opined in *Oldham Farms Development, LLC v. Oldham County Planning & Zoning Commission*, regarding the requirement of CR 52.04, "the failure of [a party] to insist upon a ruling by the circuit court on . . . issues means that they are not properly preserved for our

-13-

review." 233 S.W.3d 195, 197 (Ky. App. 2007) (citing *Dillard v. Commonwealth*, 995 S.W.2d 366, 371 (Ky. 1999)). That court further correctly explained that "under CR 52.04, on appeal a party may not be heard to complain about the absence of a trial-court ruling unless the failure to rule was brought to the attention of the trial court in writing." *Id.* (citations omitted).

*Wieland*, 671 S.W.3d at 256.

An appellate court "is without authority to review issues not raised in or decided by the trial court." *Regional Jail Authority v. Tackett*, 770 S.W.2d 225, 228 (Ky. 1989); *Matthews v. Ward*, 350 S.W.2d 500 (Ky. 1961). Thus, this issue, having not been addressed by the trial court in its written order, will not be reviewed.

## Prescriptive Easement

Spainhoward alleges error on the part of the trial court allowing Frasier to proceed to trial stating a claim for a prescriptive easement. Procedurally, Frasier first made a claim for a public road and prescriptive easement in his Answer/Counterclaim. However, two weeks before trial, Frasier amended his Answer to withdraw the claim for easement by prescription leaving only the counterclaims of easement by necessity, quasi-easement, and public road. Then, during a conference in the judge's chambers on the day of trial, the judge granted Frasier's motion to revive his claim for a prescriptive easement. The trial went

-14-

forward that day as scheduled and, subsequently, Frasier presented evidence pertaining to the prescriptive easement claim.

At the conclusion of evidence, the jury was given instructions that included two separate claims on the part of Frasier: 1) the existence of a public road, and 2) the existence of a prescriptive easement. Notably, the jury found in favor of Frasier on both issues. Spainhoward appeals the propriety of allowing Frasier to go forward, on the day of trial, with a claim he had previously abandoned.

We find that any error by the trial court in allowing Frasier to proceed with his claim of prescriptive easement was harmless. CR 61.01 states in relevant part, "[t]he court at every stage of the proceeding must disregard any error or defect in the proceeding which does not affect the substantial rights of the parties." In the case *sub judice*, the jury found Frasier rightfully accessed his property, by way of Spainhoward's property, on the basis of two theories: the existence of a public road *and* the existence of a prescriptive easement. Thus, if we were to decide the issue of prescriptive easement was not properly presented to the jury, the outcome would not change. Frasier succeeded in his claim of public road making the finding of a prescriptive easement superfluous. Therefore, any error in relation to the trial court's decision to allow Frasier to go forward on a claim of

prescriptive easement, if an error did exist, is rendered harmless by the jury's

finding of the existence of a public road.  Thus, we decline to review this decision.


ALL CONCUR.


BRIEF FOR APPELLANTS:         BRIEF FOR APPELLEE:

William Clinton Prow          Robert F. Sexton
Providence, Kentucky          Owensboro, Kentucky